**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ARAMARK SERVICES, INC. f/k/a ARAMARK CORPORATION; ARAMARK SERVICES, INC. GROUP HEALTH PLAN; ARAMARK UNIFORM SERVICES GROUP HEALTH AND WELFARE PLAN; and ARAMARK BENEFITS COMPLIANCE REVIEW COMMITTEE,<br><br>          Plaintiffs,<br><br>   v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>          Defendant. | No. 2:23-cv-00446-JRG<br><br>████████████████ |

**DEFENDANT AETNA LIFE INSURANCE COMPANY'S MOTION AND SUPPORTING**
**MEMORANDUM OF LAW TO STAY PROCEEDINGS PENDING ARBITRATION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.    The Court Should Stay These Proceedings Under Section 3 of the FAA. ..................... 4

    A.    The Arbitration Provision in the MSA is a Valid Agreement to Arbitrate. .................... 4

    B.    The Valid Delegation Means the Arbitrator Must Resolve Threshold Issues of Arbitrability as the Parties Agreed. ............................................................................. 5

    C.    The Delegation Clause Applies Notwithstanding the Equitable Relief Provision. ........ 6

II.    Aramark's Claims Are Subject to Arbitration. ................................................................ 8

    A.    The Allegations in Aramark's FAC Touch Matters Covered by the MSA. .................. 8

    B.    Aramark Seeks Legal, Not Equitable Relief, in its FAC. ........................................... 10

III.   In Addition, or in the Alternative, the Court Should Exercise its Discretion to Stay These Proceedings in the Interest of Comity and Judicial Efficiency ............................ 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*,
  2021 WL 7184974 (E.D. Tex. Nov. 16, 2021) ....................................................................15

*ACS Recovery Servs. v. Griffin*,
  723 F.3d 518 (5th Cir. 2013) ...........................................................................................14

*Alford v. Dean Witter Reynolds, Inc.*,
  975 F.2d 1161 (5th Cir. 1992) ............................................................................................3

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019), *remanded from*, 139 S. Ct. 524 (2019) ...................................6

*Armstrong v. Assocs. Int'l Holdings Corp.*,
  242 F. App'x 955 (5th Cir. 2007) ......................................................................................10

*Arnold v. HomeAway, Inc.*,
  890 F.3d 546 (5th Cir. 2018) ..........................................................................................6, 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ............................................................................................................8

*Baskin v. EK Real Est. Servs., NY, LLC*,
  2022 WL 17742738 (E.D. Tex. Sept. 13, 2022) ...............................................................5, 8

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ................................................................................................11, 12, 13

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) ...............................................................................................7

*East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc.*,
  2017 WL 876313 (W.D. Tex. Mar. 2, 2017) .....................................................................7, 8

*EPL Oil & Gas, LLC v. Trimont Energy (Now) LLC*,
  640 F. Supp. 3d 687 (E.D. Tex. 2022) .................................................................................7

*Gahagan v. United States Citizenship & Immigration Servs.*,
  911 F.3d 298 (5th Cir. 2018) .............................................................................................13

*Gearlds v. Entergy Servs., Inc.*,
  709 F.3d 448 (5th Cir. 2013) .............................................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991).................................................................................3

*Grant v. Houser*,
 799 F. Supp. 2d 673 (E.D. La. 2011)........................................................15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
 534 U.S. 204 (2002).....................................................................11, 12, 13

*Harmon v. Shell Oil Co.*,
 2023 WL 2474503 (S.D. Tex. Mar. 13, 2023)...........................................11

*Hawk v. Spaghetti Warehouse Rests., Inc.*,
 2003 WL 21246138 (N.D. Tex. May 1, 2003) ..............................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019)............................................................................5, 6, 7

*Ingersoll-Rand Co. v. McClendon*,
 498 U.S. 133 (1990)..................................................................................10

*Jones v. Halliburton Co.*,
 583 F.3d 228 (5th Cir. 2009) ......................................................................9

*Kirksey v. Doctor's Assocs. Inc.*,
 2018 WL 6651011 (E.D. La. Dec. 18, 2018).............................................14

*L & R Realty v. Conn. Nat'l Bank*,
 732 A.2d 181 (Conn. App. Ct. 1999)..........................................................4

*Laterra v. Ge Betz, Inc.*,
 2017 WL 3485505 (D. Conn. Aug. 14, 2017) ..............................................4

*Lee v. Verizon Commc'ns, Inc.*,
 837 F.3d 523 (5th Cir. 2016) ....................................................................10

*Lizalde v. Vista Quality Mkts.*,
 746 F.3d 222 (5th Cir. 2014) ......................................................................4

*Mattox v. Comcast Cable Commc'ns Mgmt., LLC*,
 2018 WL 8367498 (D. Conn. July 16, 2018) ..............................................5

*McCravy v. Metro. Life Ins. Co.*,
 690 F.3d 176 (4th Cir. 2012).....................................................................13

*Merigan v. Liberty Life Assurance Co.*,
 826 F. Supp. 2d 388 (D. Mass. 2011) .......................................................12

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)..................................................................................10, 11, 12, 13

*Montanile v. Bd. of Trs. of the Nat'l Elevator Industry Health Benefit Plan*,
    577 U.S. 136 (2016)........................................................................................11, 12, 13

*Neukranz v. Conestoga Settlement Servs., LLC*,
    2020 WL 6325736 (N.D. Tex. Apr. 15, 2020) ......................................................3

*Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ..............................................................................5, 6

*Pennzoil Expl. & Prod. Co. v. Ramco Energy*,
    139 F.3d 1061 (5th Cir. 1998) ................................................................................9

*Rose v. PSA Airlines, Inc.*,
    80 F.4th 488 (4th Cir. 2023) ............................................................................12, 13

*Se. Enameling Corp. v. Gen. Bronze Corp.*,
    434 F.2d 330 (5th Cir. 1970) ..................................................................................3

*Sosa v. Parco Oilfield Servs.*,
    2006 WL 2821882 (E.D. Tex. Sept. 27, 2006) ......................................................3

*U-Haul Int'l, Inc. v. Hire A Helper, LLC*,
    2009 WL 10671527 (S.D. Cal. Apr. 13, 2009)....................................................10

*Waste Mgmt. v. Residuos Industriales Multiquim, S.A.*,
    372 F.3d 339 (5th Cir. 2004) ..................................................................................9

*Will-Drill Res., Inc. v. Samson Res. Co.*,
    352 F.3d 211 (5th Cir. 2003) ..................................................................................4

**Statutes**

Employee Retirement Income Security Act of 1974 29 U.S.C. § 1001, *et seq.* ................... *passim*

Federal Arbitration Act, 9 U.S.C. § 3 ................................................................................2, 3, 4

Federal Arbitration Act, 9 U.S.C. § 4 ........................................................................................1

**Other Authorities**

American Arbitration Association Rule R-7(a) ..........................................................................5

Federal Rules of Civil Procedure Rule 12 ..............................................................................15

Local Rule CV-7(h) ....................................................................................................................2

# INTRODUCTION

The relationship between Plaintiffs Aramark Services, Inc. f/k/a Aramark Corporation, Aramark Services, Inc. Group Health Plan, Aramark Uniform Services Group Health and Welfare Plan, and Aramark Benefits Compliance Review Committee (collectively, "Plaintiffs" or "Aramark") and Defendant Aetna Life Insurance Company ("Defendant" or "Aetna") is governed by a contract referred to as a Master Services Agreement (the "MSA"), which contains an arbitration provision (the "Arbitration Provision"). Under the Arbitration Provision, the parties expressly agreed to arbitrate in Hartford, Connecticut "[a]ny controversy or claim arising out of or relating to [the Master Services] Agreement or the breach, termination, or validity thereof." By invoking the American Arbitration Association ("AAA") Commercial Arbitration Rules (the "AAA Rules"), the Arbitration Provision also expressly refers this dispute to the arbitrator to resolve, in the first instance, threshold questions of arbitrability.

Aramark's filing of its complaint (ECF No. 1) and First Amended Complaint ("FAC") (ECF No. 4) is a clear violation of the Arbitration Provision, which requires that all disputes related to the MSA be submitted to arbitration. The only, limited exception applies to requests for injunctive and equitable relief. The FAC contains only one request for such relief: a request for a preliminary injunction, first made on page 31 of the 31-page FAC. This request is not a separate claim and does not affect the arbitrability of this dispute.

On February 28, 2024, Aetna filed a Petition before the United States District Court for the District of Connecticut to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4; a copy of the papers filed by Aetna in that proceeding accompany this motion.[1] Aetna seeks

---

[1] Specifically, a copy of the key pleadings in the District of Connecticut action—the Petition to Compel Arbitration, the accompanying Memorandum of Law, the Declaration of Peter Kocoras ("Kocoras Decl.")—are attached hereto as Exhibits 1-3, respectively. Aetna has separately requested leave to file the MSA under seal, as Exhibit 4 to the Motion to Stay (*See* ECF No. 9).

the instant stay—whether under section 3 or the Court's inherent powers—pending disposition of the Petition.[2]

## FACTUAL BACKGROUND

Aramark Services, Inc. Group Health Plan and the Aramark Uniform Services Group Health and Welfare Plan (the "Plans") are health and welfare benefit plans sponsored by Plaintiff Aramark Services, Inc. Aramark hired Aetna to provide third party administrative ("TPA") services with respect to the Plans. The MSA has been effective since January 1, 2018. The parties to the MSA are Aetna and Aramark Corporation, which is now known as Aramark Services, Inc. (*See* ECF No. 4, p. 1.) Aramark Corporation is defined in the MSA as the customer and plan administrator for the Plans. (*See* MSA, ¶ 6.) The third Plaintiff, the Aramark Benefits Compliance Review Committee, was created by Aramark Services, Inc., to act as administrator of the Plans. (*See* ECF No. 4, ¶ 10.) Accordingly, it is undisputed that all Plaintiffs are bound by the MSA. The MSA is governed by Connecticut law. (*See* MSA, ¶ 18(E).)

Paragraph 15 of the MSA is titled "Binding Arbitration of Certain Disputes" (the previously defined "Arbitration Provision"). It states in relevant part as follows:

> **Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof**, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration **in Hartford, CT**, administered by the American Arbitration Association ('AAA') and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ('Rules'). The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of state laws inconsistent therewith or that would produce a different result, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Except as may be required by law or to the extent necessary in connection with a judicial challenge, or enforcement of an award, neither a party nor the arbitrator may disclose the existence, content, record or results of an arbitration…. The arbitrator may award only monetary relief and is not empowered to award

---

[2] Pursuant to Local Rule CV-7(h), the undersigned advises the Court that counsel have conferred on this matter and no resolution could be reached. Aramark objects to Aetna's request to stay these proceedings.

damages other than compensatory damages.

(MSA, ¶ 15 (emphasis added).)

## **LEGAL STANDARD**

The FAA, which governs here, "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Section 3 of the FAA "provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court ***shall*** stay the trial of the action until the arbitration is complete." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added) (citing 9 U.S.C. § 3). Thus, a "stay is ***mandatory*** upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.* (internal quotation marks omitted) (emphasis added). "[T]he court may not deny a stay in such a situation." *Id.*

Once a district court determines that there is a contract with a "valid and enforceable arbitration clause," the FAA "requires" the court to "stay . . . the action." *Neukranz v. Conestoga Settlement Servs., LLC*, 2020 WL 6325736, at *1 (N.D. Tex. Apr. 15, 2020). Thus, "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Se. Enameling Corp. v. Gen. Bronze Corp.*, 434 F.2d 330, 334-35 (5th Cir. 1970) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)); *see also Sosa v. Parco Oilfield Servs.*, 2006 WL 2821882, at *3 (E.D. Tex. Sept. 27, 2006) (same).

# ARGUMENT

## I. The Court Should Stay These Proceedings Under Section 3 of the FAA.

### A. The Arbitration Provision in the MSA is a Valid Agreement to Arbitrate.

The MSA Arbitration Provision is a valid and enforceable written agreement to arbitrate.[3] First, there is no dispute that the MSA was formed between the parties and that it contains an Arbitration Provision. Aramark cites and relies on the MSA throughout the FAC and even acknowledges the "arbitration clause" in the FAC. (ECF No. 4, ¶ 16 n.2.) This is not a circumstance where the very existence of the contract and arbitration clause is in doubt. *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached.").

Second, the Arbitration Provision—including the delegation clause—is valid and binding under Connecticut law. "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties." *L & R Realty v. Conn. Nat'l Bank*, 732 A.2d 181, 188 (Conn. App. Ct. 1999). The terms of the Arbitration Provision are mutually agreed and appear in definite, written form. (MSA, ¶ 15.) This includes the invocation of the AAA Rules by the parties. (*Id.*) The AAA Rules are also definite and certain themselves and are publicly available to all parties.

Additionally, "[f]or a promise to be enforceable against the promisor, the promisee must have given consideration for the promise." *Laterra v. Ge Betz, Inc.*, 2017 WL 3485505, at *6 (D. Conn. Aug. 14, 2017) (interpreting Connecticut law) (internal quotation marks omitted). In Connecticut, "[a] mutual promise to arbitrate is itself adequate consideration to support

---

[3] "To determine whether an agreement to arbitrate is contractually valid, courts apply ordinary state-law principles that govern the formation of contracts." *Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 225 (5th Cir. 2014) (internal quotation marks omitted).

the agreement." *Mattox v. Comcast Cable Commc'ns Mgmt., LLC*, 2018 WL 8367498, at *1 (D. Conn. July 16, 2018).

### B.     The Valid Delegation Means the Arbitrator Must Resolve Threshold Issues of Arbitrability as the Parties Agreed.

The Court must leave the question of arbitrability to the arbitrator once arbitrability has been delegated. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue."). Thus, this Court's role on this motion is limited: the Court need only confirm the existence of a valid delegation provision to find that the matter is referable to arbitration.

The MSA Arbitration Provision states that any required arbitration is to be "administered by the American Arbitration Association ('AAA') and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ('Rules')." (MSA, ¶ 15.) The AAA Rules themselves directly empower the arbitrator to address gateway issues. AAA Rule R-7(a). Rule 7 specifically states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.*[4]

In the Fifth Circuit, "it is well-settled that when an arbitration agreement incorporates the AAA rules, it constitutes 'clear and unmistakable evidence' that the [p]arties intended to delegate to an arbitrator the power to decide arbitrability." *Baskin v. EK Real Est. Servs., NY, LLC*, 2022 WL 17742738, at *7 (E.D. Tex. Sept. 13, 2022) (internal quotation marks omitted). In *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, the Fifth Circuit recognized that the AAA Rules

---

[4] Available at https://adr.org/sites/default/files/Commercial-Rules_Web.pdf, last visited February 23, 2024.

provide the arbitrator with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." 687 F.3d 671, 675 (5th Cir. 2012) (internal quotation marked omitted). The court then "agree[d] with most of [its] sister circuits the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id*. By incorporating AAA R-7(a) into the Arbitration Provision, the parties have provided clear and unmistakable evidence of their mutual intent to delegate threshold issues of arbitrability to the arbitrator.

> ### C. The Delegation Clause Applies Notwithstanding the Equitable Relief Provision.

Aetna anticipates that Aramark will argue that the language "except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief" ("Equitable Relief Provision") is a "carve-out" that means that the parties did not agree to delegate issues of arbitrability to an arbitrator. But the weight of authority in the Fifth Circuit provides otherwise.

In *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282-83 (5th Cir. 2019), *remanded from*, 139 S. Ct. 524 (2019), the Fifth Circuit assessed an arbitration provision providing that it applied to disputes arising under the applicable agreement except not to "actions seeking injunctive relief." Specifically, the Fifth Circuit found that "[g]iven that carve-out" it could not "say that the [applicable agreement] evince[d] a 'clear and unmistakable' intent to delegate arbitrability." *Id*. at 281-82.

*Henry Schein* does not stand for the proposition that *any* exclusion of *any* possible issue from arbitration defeats any delegation. "The mere fact that an arbitration provision does not apply to every possible claim does not render the parties' intent to delegate threshold questions about that provision less clear." *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018). In *Arnold*, the Fifth Circuit reviewed an earlier decision in *Henry Schein* and recognized that "a contract might

incorporate the AAA rules but nonetheless otherwise muddy the clarity of the parties' intent to delegate." *Id*. (citing *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 494 (5th Cir. 2017)). However, the Fifth Circuit found that the case before it did not present "such a contract" where the arbitration clause incorporated the AAA Rules but also stated that certain claims could still be raised in small claims court: "[a]ny and all Claims will be resolved by binding arbitration, rather than in court, except [the user] may assert Claims on an individual basis in small claims court if they qualify." *Id*. (internal quotation marks omitted).

The Equitable Relief Provision here is similarly distinguishable from *Henry Schein* because, unlike in *Henry Schein*, it does not except any "action" seeking injunctive relief. Rather, the Equitable Relief Provision merely provides the parties may continue to pursue equitable relief in courts, rather than in arbitration. The Equitable Relief Provision is more similar to the arbitration clause in *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014) than the clause in *Henry Schein*. In *Crawford*, the court found that the parties clearly and unmistakably agreed to arbitrate arbitrability where the relevant arbitration provision said that "Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law." *Id*. at 256, 263 (internal quotation marks omitted); *see also EPL Oil & Gas, LLC v. Trimont Energy (Now) LLC*, 640 F. Supp. 3d 687, 697 (E.D. Tex. 2022) (finding that the applicable arbitration agreement was more similar to *Crawford* than *Henry Schein* and finding that agreement "delegate[d] the arbitrability of all claims to the arbitrator").

In *East El Paso Physicians' Medical Center, LLC v. Aetna Health Inc*., 2017 WL 876313, at *1 (W.D. Tex. Mar. 2, 2017), the court assessed the *exact same* arbitration provision at issue

here, also from an Aetna contract. The court found conclusively that "the parties clearly and unmistakably intended to delegate questions of arbitrability to the arbitrator." *Id*. at *4. In reaching that decision, it reviewed and followed the reasoning of "a number of other courts [that] have declined to address arbitrability, leaving that determination to the arbitrator, even when the arbitration clause at issue contained an equitable relief exception." *Id*. at *5. *See also Baskin*, 2022 WL 17742738, at *2-3, 7 (finding questions of arbitrability had been delegated to arbitrator in light of incorporation of AAA Rules, despite arbitration provision stating requests for preliminary injunction were not "subject to the mandatory arbitration provision").

## II.     Aramark's Claims Are Subject to Arbitration.

### A.     The Allegations in Aramark's FAC Touch Matters Covered by the MSA.

Even if this Court were to decide the issue of arbitrability (which it should not), the Court should still reach the conclusion that Aramark's claims and the dispute are subject to the Arbitration Provision. The Arbitration Provision ***requires*** arbitration of "[a]ny controversy or claim arising out of or relating to [the MSA] or the breach, termination, or validity thereof." (MSA, ¶ 15.) The language of the arbitration agreement evinces a clear intent to arbitrate all disputes that have an arguable relationship to the MSA.

Federal courts must apply a presumption in favor of arbitrability and that presumption is particularly applicable when, like here, the Arbitration Provision is broadly worded. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The Arbitration Provision refers all disputes merely "relating to" the MSA to arbitration. *See Hawk v. Spaghetti Warehouse Rests., Inc.*, 2003 WL 21246138, at *2 (N.D. Tex. May 1, 2003) ("[A] broad arbitration agreement governs disputes that 'relate to' or 'are connected to' the contract.") (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998)). "If the allegations underlying those claims touch matters covered by the parties' agreements, then those claims must be arbitrated,

whatever the legal labels attached to them." *Waste Mgmt. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004) (internal quotation marks and punctuation omitted).

To determine whether the claims fall within the scope of the broad arbitration clause, the Court should "'focus on factual allegations in the complaint rather than the legal causes of action asserted.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quoting *Waste Mgmt.*, 372 F.3d at 344). On the face of the FAC, the allegations "touch" matters covered by the MSA—and do so repeatedly. This entire dispute arises out of Aetna's alleged misconduct in performing its obligations under the MSA. (*See* ECF No. 4, ¶ 3 (describing Aetna's role under the MSA as "provid[ing] access to its network of providers and adjudicat[ing] claims for payment," which Aetna performs "[i]n exchange for a monthly fee."); *see id.*, ¶¶ 3, 19-25 (identifying Aetna's alleged duties); *id.*, ¶¶ 19-31 (alleging that Aetna violated its purported contractual and fiduciary duties).) One simply cannot read the claims alleged in the FAC and come to any conclusion other than that they arise out of or relate to the MSA. The MSA itself is cited or referred to repeatedly throughout the FAC, making the aptness of arbitration apparent. (*See id.*, ¶¶ 17, 19-25, 56, 93.)

At their core, Aramark's claims sound in breach of contract. (*See* ECF No. 4, ¶¶ 3, 4, 74, 77.) The fact that Aramark's claims are styled as ERISA Fiduciary Duty claims does not mean they are not related to the MSA or that they are not arbitrable. At a minimum, the claims have a direct and significant relationship with the MSA. *See Pennzoil*, 139 F.3d at 1067 (explaining broad arbitration clauses embrace all disputes related to the agreement, "regardless of the label attached to the dispute").

Nor does the fact that Aramark seeks "a preliminary injunction compelling [Aetna] to provide all Plan claims data" (ECF No. 4, *Prayer*, ¶ (c)) prevent the Court from finding that the claims in this action are arbitrable or that the matter is delegated to the arbitrator. The Arbitration

Provision does not contain language that excludes arbitration of any controversy or claim that seeks equitable relief as part of the total relief sought; it merely excludes a form of relief that may be awarded during arbitration. *See, e.g., U-Haul Int'l, Inc. v. Hire A Helper, LLC*, 2009 WL 10671527, at *3 (S.D. Cal. Apr. 13, 2009) ("Thus, the arbitration clause exempts certain categories of relief an arbitrator may award, but does not exclude entire disputes from arbitration merely because a party seeks that category of relief."). A preliminary injunction is a remedy that was typically available in equity. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).

The presumption of arbitrability "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007) (quotation omitted and emphasis added). Here, it cannot be said with positive assurance that the arbitration agreement does not encompass Aramark's claims. And should any doubt remain, all doubts must be resolved in favor of arbitration, with the scope and nature of the requested relief to be determined. *See id.*

### B. Aramark Seeks Legal, Not Equitable Relief, in its FAC.

While Aramark purports to seek equitable relief (ECF No. 4, ¶ 16 n.2), what Aramark actually seeks is to hold Aetna personally liable and recover monetary damages from Aetna's general funds. Supreme Court precedent holds this is a claim for legal—not equitable—damages, placing Aramark's claim outside the bounds of equitable relief available under ERISA. Because all ERISA civil claims rely on § 502(a), *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990), the Court need only address whether Aramark's claims under §§ 502(a)(2) and 502(a)(3) seek legal relief.

Aramark's claims under ERISA § 502(a)(2) are indisputably claims for monetary damages. Relief under § 502(a)(2) includes monetary relief. *See, e.g., Lee v. Verizon Commc'ns, Inc.*, 837

F.3d 523, 544 (5th Cir. 2016) (explaining that §§ 502(a)(2) and 409 "create[] a right to relief against fiduciaries for the restoration of any loss to a plan resulting from [a breach of fiduciary duty].") To be sure, district courts have sporadically held that the relief available under § 502(a)(2)—even if monetary—may potentially be equitable in nature. *See, e.g., Harmon v. Shell Oil Co.*, 2023 WL 2474503, at *3 (S.D. Tex. Mar. 13, 2023) ("[*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)] suggests that the relief Plaintiffs seek from Defendants under [§ 502(a)(2)] is equitable in nature."). However, these holdings are outliers and are inconsistent with the Supreme Court's overarching ERISA jurisprudence and the general weight of precedents on available remedies under ERISA.

In several landmark decisions, the Supreme Court has distinguished between equitable and legal remedies under ERISA. These decisions, which include *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), and *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), make clear that "equitable relief" under § 502(a)(3) refers to "'those categories of relief that were *typically* available in equity.'" *Great-W.*, 534 U.S. at 210 (quoting *Mertens*, 508 U.S. at 256) (emphasis in original). The Supreme Court has held that whether relief "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id.* at 213 (cleaned up). Moreover, it is well established that equitable relief under ERISA is **_not_** available if the plaintiff seeks "to impose personal liability" on a defendant "for a contractual obligation to pay money." *Id.* at 210. That is because such relief "was not typically available in equity," and money damages are "'the classic form of *legal* relief.'" *Id.* (quoting *Mertens*, 508 U.S. at 255).

Equitable and legal remedies are distinguishable in that equitable remedies are generally

"directed against some specific thing; they give or enforce a right to or over some particular thing rather than a right to recover a sum of money generally out of the defendant's assets." *Montanile*, 577 U.S. at 145 (cleaned up). The Supreme Court has cautioned that not all restitution remedies are "equitable." *Great-W.*, 534 U.S. at 212. That is, only where the money or property can "clearly be traced to particular funds or property in the defendant's possession" could courts of equity "order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Id.* at 213.

Aramark may argue that it seeks an equitable remedy of "make-whole" monetary relief under § 502(a)(3). *See Amara*, 563 U.S. at 444 (stating that because the plaintiff alleged a "breach of trust," he could seek "surcharge" under § 502(a)(3)). The Supreme Court, however, has since acknowledged that this portion of *Amara* is dicta. *See Montanile*, 577 U.S. at 148 n.3 ("[T]he Court's discussion of § 502(a)(3) in *CIGNA* [i.e., *Amara*] was not essential to resolving that case . . . ."). Relevant for purposes of this case, *Montanile* expressly declared that *Amara's* "interpretation of 'equitable relief' in *Mertens* [and] *Great-West* . . . remains unchanged." *Id.*

Nonetheless, following *Amara*, courts across the country struggled with the scope of its discussion of surcharge.[5] And confusion persisted even after the Supreme Court clarified its holding in *Montanile*. Recently, however, in a carefully written and adroitly navigated opinion, the Fourth Circuit disentangled over a decade of conflicting caselaw that flowed from *Amara*. *See Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023). *Rose* is easily the most comprehensive post-*Amara* analysis to date by a court of appeals regarding the scope of monetary relief available

---

[5] As one astute court accurately forecasted mere months after *Amara* was handed down, "[t]he Supreme Court's broad language . . . is going to be a lightening [sic] rod for litigation in the future[.]" *Merigan v. Liberty Life Assurance Co*., 826 F. Supp. 2d 388, 397 (D. Mass. 2011).

under § 502(a)(3). Ultimately, the Fourth Circuit concluded:

> [W]e return to the same rule that applied at the Supreme Court, and in this Circuit, before *Amara*: Plaintiffs that seek merely personal liability upon the defendants to pay a sum of money ask for legal, not equitable, relief under § 502(a)(3). . . . [P]laintiffs that seek to strip away defendant's unjust gains might have better luck [under § 502(a)(3)]. Their sought relief qualifies as 'equitable,' so long as the plaintiff can trace those unjust gains to specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds.

*Rose*, 80 F.4th at 504 (cleaned up); *but see Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (stating that the court was "persuaded to join the Fourth Circuit in concluding that *Amara*'s pronouncements about surcharge as a potential remedy under § 502(a)(3) should be followed.").[6]

*Montanile, Great-West,* and *Mertens* make clear that equitable relief is available under ERISA only if the plaintiff seeks *specific* funds that are (i) wrongfully in the defendant's possession and (ii) rightfully belong to the plaintiff. Put differently, courts cannot award relief that amounts to personal liability paid from the defendant's general assets to make the plaintiff whole. *See Rose*, 80 F.4th at 497–504.

Applying these standards to Aramark's claims makes clear that the FAC seeks legal relief. Aramark's lawsuit centers on Aetna's alleged misconduct in performing its contractual obligations

---

[6] The Fifth Circuit in *Gearlds* relied heavily on a Fourth Circuit decision—*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012)—which was abrogated by *Rose*. *See* 80 F.4th at 504. *McCravy*, in turn and based on *Amara*, held that a monetary make-whole remedy under § 502(a)(3) could be available. *See McCravy*, 690 F.3d at 180–81. As in *Rose*, the Fifth Circuit's endorsement of *Amara* in *Gearlds* is no longer good law in light of the Supreme Court's decision in *Montanile*. *See Gahagan v. United States Citizenship & Immigration Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." (quotation omitted)). *Montanile* was decided three years after *Gearlds* and the Fifth Circuit has not since considered the impact of *Montanile* on *Amara*. "Since *Montanile*'s approach—which is really *Merten*'s and *Great-West*'s approach—is inconsistent with *Amara*[]," *Rose*, 80 F.4th at 503, *Montanile* is not reconcilable with *Gearlds* or its progeny.

under the parties' MSA. (*See* ECF No. 4, ¶ 3.) Aramark contends that Aetna served as an ERISA claim fiduciary under the MSA and that Aetna assumed various fiduciary obligations in this role. (*See id.*, ¶¶ 19-29.) Aramark accuses Aetna of breaching its fiduciary obligations by, *inter alia*, (1) approving and paying improper, false, and fraudulent claims, (*id.*, ¶¶ 50-55, ¶¶ 57-65, ¶ 67); (2) approving alleged improper payments for Aetna subcontractors, (*id.* ¶ 56); (3) failing to provide adequate subrogation services, (*id.*, ¶ 66); (4) engaging in certain post-adjudication adjustments, including "cross-plan offsetting," "reprocessing" of claims, and "repricing" practices, (*id.*, ¶¶ 68-82); and (5) commingling Plan funds with Aetna's funds, (*id.*, ¶¶ 83-85).

Aramark's FAC makes **_no_** mention of recovering specific and identifiable funds. (*See* ECF No. 4, *Prayer*, ¶¶ (a)-(b) (seeking recovery of "any and all losses" and "any and all profits" resulting from Aetna's breach of fiduciary duties without identifying particular funds distinct from Aetna's general assets)). Aramark has thus failed to meet its burden to show that it seeks appropriate equitable relief under § 502(a)(3). *See ACS Recovery Servs. v. Griffin*, 723 F.3d 518, 525 (5th Cir. 2013) (recognizing claimant had the burden to "prove that the basis for its claim was equitable [rather than legal]").

## III.    In Addition, or in the Alternative, the Court Should Exercise its Discretion to Stay These Proceedings in the Interest of Comity and Judicial Efficiency.

Aetna requests that the Court stay these proceedings or otherwise withhold ruling to allow the District of Connecticut court to first rule on the Petition to Compel Arbitration. This would be consistent with actions taken by other courts within the Fifth Circuit. *See Kirksey v. Doctor's Assocs. Inc*., 2018 WL 6651011, at *2-3 (E.D. La. Dec. 18, 2018) (court did not rule on motion to stay until after the District of Connecticut ruled on petition to compel arbitration). In addition, or in the alternative, this Court should stay all proceedings in this action based on considerations of comity and the Court's inherent authority to control proceedings in the interest of judicial

efficiency.[7]

The Court can enter a discretionary stay even if it chooses not to recognize the arbitrability of all of Aramark's claims or requests for relief. If the District of Connecticut grants Aetna's Petition, any decision by this Court relating to the merits of Aramark's claims could unduly influence the decisions reserved for the arbitrator, could create a risk of inconsistent results, and would force the parties to expend resources litigating the exact same issues in two venues simultaneously. In contrast, Aramark will face no prejudice by entry of a stay. A stay is, therefore, necessary to prevent inconsistent results and will benefit, not prejudice, both parties.[8]

## **CONCLUSION**

For the foregoing reasons, Aetna respectfully requests that the Court stay all proceedings in this case against it pending resolution of its Petition to Compel Arbitration filed in the District Court for the District of Connecticut and, should that Petition be granted, through the pendency of the arbitration proceedings.[9]

---

[7] "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*, 2021 WL 7184974, at *2 (E.D. Tex. Nov. 16, 2021) (internal quotation marks omitted).

[8] *See Grant v. Houser*, 799 F. Supp. 2d 673, 675 (E.D. La. 2011) (quoting *Coastal (Berm.) Inc. v. E.W. Saybolt & Co.*, 761 F.2d at 204 n.6 (5th Cir. 1985)) ("Only where there is 'something close to genuine necessity' should a district court grant a discretionary stay based on its inherent power to do so and only to the extent that other litigants are not unduly prejudiced.").

[9] Aetna respectfully requests that, if the Court denies the Motion, that Aetna be granted 21 days from the date of that denial to file an answer or further responsive pleading pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Dated: March 1, 2024

Respectfully submitted,

**GILLAM & SMITH, LLP**

*Melissa R. Smith*
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

HUNTON ANDREWS KURTH LLP
John B. Shely
jshely@HuntonAK.com
M. Katherine Strahan
kstrahan@HuntonAK.com
David W. Hughes
DHughes@HuntonAK.com
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200

THOMPSON HINE LLP
Peter J. Kocoras
(*pro hac vice* application forthcoming)
Gregory H. Berman
(*pro hac vice* application forthcoming)
20 North Clark Street, Suite 3200
Chicago, Illinois 60602-5093
(312) 998-4241
Peter.Kocoras@ThompsonHine.com
Gregory.Berman@thompsonhine.com

*Attorneys for Defendant*
*Aetna Life Insurance Company*

## CERTIFICATE OF CONFERENCE

I hereby certify that I contacted counsel for Plaintiffs regarding this motion on February 29, 2024, and was advised that Plaintiffs are opposed to the relief sought.

*Melissa R. Smith*
Melissa Richards Smith

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*Melissa R. Smith*
Melissa Richards Smith