IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ARAMARK SERVICES, INC. f/k/a ARAMARK CORPORATION; ARAMARK SERVICES, INC. GROUP HEALTH PLAN; ARAMARK UNIFORM SERVICES GROUP HEALTH AND WELFARE PLAN; and ARAMARK BENEFITS COMPLIANCE REVIEW COMMITTEE, <br><br>*Plaintiffs*, <br><br>v. <br><br>AETNA LIFE INSURANCE COMPANY, <br><br>*Defendant*. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.  2:23-CV-00446-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Aetna Life Insurance Company's ("Defendant" or "Aetna") Motion to Stay Proceedings Pending Arbitration ("the Motion"). (Dkt. No. 10.) Having considered the Motion and its briefing, the Court finds that it should be and hereby is **DENIED** for the reasons set forth herein.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Aramark Services, Inc. sponsors the Aramark Services, Inc. Group Health Plan and the Aramark Uniform Services Group Health and Welfare Plan ("the Plans"), which are group health plans organized and operated under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Dkt. No. 4 at 1-2.) In 2018, Aramark hired Aetna to provide third-party administrative services with respect to the Plans. (*Id.* at 4.) Aetna's responsibilities included, among other things, evaluating claims for payment submitted by doctors and hospitals. (*Id.*) The relationship between the parties is governed by a Master Services Agreement ("MSA"), which

contains an arbitration provision ("the "Arbitration Provision") at § 15.  (Dkt. No. 10 at 1.)  The Arbitration Provision provides, in relevant part: "Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief, or any other form of equitable relief, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ('AAA') and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ('the Rules')."  (Dkt. No. 10-4 at 7.)

On September 27, 2023, Plaintiffs Aramark Services, Inc. f/k/a Aramark Corporation, Aramark Services, Inc. Group Health Plan, Aramark Uniform Services Group Health and Welfare Plan, and Aramark Benefits Compliance Review Committee (collectively, "Plaintiffs" or "Aramark") filed a Complaint against Aetna alleging that Aetna breached its fiduciary duty as a third-party plan administrator under ERISA.  (Dkt. No. 2.)  Aramark filed a First Amended Complaint on December 22, 2023.  (Dkt. No. 4.)

On February 28, 2024, Aetna filed a Petition before the District Court for the District of Connecticut to compel arbitration under the Federal Arbitration Act ("FAA").  (Dkt. No. 10 at 1.)  The parties do not dispute that the case before this Court was filed before Aetna filed its action in the District of Connecticut, and is the first filed case.

On March 1, 2024, Aetna filed its Motion to Stay Proceedings Pending Arbitration.  (Dkt. No. 10.)  That motion is now before the Court.

II.   **LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), an arbitration agreement that involves interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2012).  Section 3 of the FAA requires

courts to stay court proceedings pending arbitration for any issue covered by an arbitration agreement. 9 U.S.C. § 3. *See also Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).

Courts perform a two-step inquiry to determine whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "The first step is contract formation—whether the parties entered into *any arbitration agreement at all*." *Id.* "The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* "While ordinarily both steps are questions for the court, the parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019). "Unless the parties clearly and unmistakably prove otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 279 (citing *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)).

### III. DISCUSSION

In its Motion, Aetna seeks a stay of this litigation pending arbitration under Section 3 of the FAA. (*See* Dkt. No. 10.) The Court finds that the question of whether to stay the case necessarily turns on whether the claims are properly subject to mandatory arbitration. Accordingly, the Court addresses that issue herein.

However, the Court first addresses the threshold issue of whether the parties have delegated to the arbitrator the power to decide whether a particular claim is arbitrable.

#### A. Arbitrability

Aetna argues that the parties have delegated to the arbitrator the power to resolve threshold issues of arbitrability. (Dkt. No. 10 at 5.) Aetna observes that it is undisputed that the MSA's Arbitration Provision incorporates the American Arbitration Association ("AAA") rules, which

3

empower the arbitrator to address gateway issues. (*Id.*) Aetna further contends that the parties' mutual intent to delegate applies notwithstanding the exception for equitable relief in the Arbitration Provision. (*Id.* at 6-8.)

In response, Aramark points out that the Arbitration Provision contains an exclusionary provision that carves out claims seeking equitable relief. (Dkt. No. 20 at 3.) In support, Aramark cites *Archer*, 935 F.3d 274, and observes that, like in *Archer*, the carve-out in the Arbitration Provision is in the same sentence as the one incorporating the AAA rules. (*Id.* at 5-6.) Therefore, in Aramark's view, the most natural reading of the Arbitration Provision is that arbitrability of any dispute, except a dispute seeking "any [] form of equitable relief," is to be decided by an arbitrator. (*Id.*) That being so, arbitrability of a dispute seeking "any [] form of equitable relief" is to be decided by the Court and not the arbitrator.

Aetna responds that *Archer* is distinguishable because the carve-out in that case excluded "whole actions" as opposed to "a form of relief." (Dkt. No. 27 at 6.)

Having considered the above arguments, the Court finds that the parties did not clearly and unmistakably delegate all threshold issues of arbitrability to the arbitrator. The Arbitration Provision provides that "[a]ny controversy or claim arising out of or relating to this Agreement," except for "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief," shall be settled by binding arbitration in accordance with the AAA rules. (Dkt. No. 10-4 at 7.) The Court agrees with Aramark. The plain language and most natural reading of the Arbitration Provision is that the parties agreed to delegate arbitrability to the arbitrator in accordance with the AAA rules for all disputes except those seeking any form of equitable relief, which are carved out in the same sentence. In light of the Fifth Circuit's guidance in *Archer*, the Court is not persuaded that the carve-out "evinces a clear and unmistakable intent to delegate

4

arbitrability." *Archer*, 935 F.3d at 281-282. The parties could have unambiguously and expressly delegated the carve-out to the arbitrator. They did not. The Court declines to re-write their agreement.

Accordingly, the Court finds that it should decide the threshold issue of arbitrability. The Court next turns to whether Plaintiffs' ERISA claims are properly subject to mandatory arbitration.

### B. Aramark's ERISA Claims

In the Amended Complaint, Aramark alleges that Aetna breached its duty as an ERISA fiduciary under 29 U.S.C. §§ 1132(a)(2), (a)(3), 1106(b)(1), and 1109(a). (Dkt. No. 4 at 26-30.) Aramark seeks money damages resulting from Aetna's alleged breach of its fiduciary duty. (*Id.* at 30-31.) The parties do not appear to dispute that they are both ERISA fiduciaries. (*See* Dkt. No. 10; Dkt. No. 20.)

Aetna argues that Aramark's claims under ERISA seek monetary damages, which are "the classic form of legal relief." (Dkt. No. 10 at 11 (citing *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).) Citing Supreme Court precedent and a Fourth Circuit case, Aetna contends that equitable relief is available under ERISA only if the plaintiff seeks "specific funds that are [] wrongfully in the defendant's possession and [] rightfully belong to the plaintiff." (*Id.* at 13 (citing *Mertens v. Hewitt Assoc.,* 508 U.S. 248 (1993); *Great-West*, 534 U.S. 204 (2002); *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016); *Rose v. PSA Airlines*, 80 F.4th 488, 496, 507 (4th Cir. 2023).) Aetna argues that Aramark's Amended Complaint makes no mention of recovering specific and identifiable funds. (*Id.* at 14.) Therefore, in Aetna's view, Aramark's ERISA claims seek legal relief and therefore should be arbitrated. (*Id.*)

In response, Aramark points out that Aetna routinely takes the position that ERISA claims are equitable. (Dkt. No. 20 at 7.) As an example, Aramark argues that Aetna sought to avoid

arbitration in *Group 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-cv-1290 (S.D. Tex. Apr. 10, 2020) by arguing that Group 1's ERISA claims under § 1132(a)(2) were equitable. (*Id.*) In addition, Aramark argues that the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), is the controlling authority on § 1132(a)(3) ERISA claims against fiduciaries. (*Id.* at 7-8.) According to Aramark, *Amara* explains that a "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary" is a "traditional equitable remedy." (*Id.* at 8.) Aramark further relies on *Gearlds v. Entergy Servs.*, 709 F.3d 448 (5th Cir. 2013), in which the Fifth Circuit interpreted *Amara*. Under Aramark's reading, *Gearlds* confirms that under *Amara*, "compensatory money damages are an available equitable remedy under § 1132(a)(3)." (*Id.* at 9 (internal citations omitted).) Aramark contends that the Supreme Court cases relied upon by Aetna are distinguishable because the defendants in those cases were not fiduciaries. (*Id.* at 8.) Acknowledging that *Amara* does not address claims arising under § 1132(a)(2), Aramark compiles post-*Amara* case law from other District Courts finding that § 1132(a)(2) claims under ERISA are likewise equitable. (*Id.* at 10.)

Aetna responds that *Montanile*, a Supreme Court case that postdates *Amara* and *Gearlds*, found that *Amara*'s discussion of equitable relief was dicta. (Dkt. No. 27 at 3, 5.) Aetna therefore urges this Court to adopt the reasoning in *Montanile* and *Rose*, *supra* at 5. (*Id.* at 4.) Aetna further points out that here, unlike in *Amara*, Aramark is not a beneficiary seeking plan benefits. (*Id.*) Notably, Aetna does not meaningfully address Aramark's argument that Aetna previously took the position in the *Group 1* case that ERISA claims under § 1132(a)(2) were equitable. (*Id.* at 2-3.)

In response, Aramark argues that *Montanile* did not overrule *Amara*, and that Courts of Appeals after *Montanile* have continued to find that ERISA claims seeking monetary damages

6

from ERISA fiduciaries are equitable. (Dkt. No. 32 at 1.) Aramark further contends that the law in the Fifth Circuit, including *Gearlds*, controls. (*Id.* at 2.)

After careful consideration of the briefing and the applicable precedent, this Court finds that Aramark's §§ 1132(a)(2) and (a)(3) claims under ERISA for monetary damages are properly equitable and therefore are not subject to mandatory arbitration. In *Amara*, the Supreme Court considered whether a surcharge remedy under § 1132(a)(3) against a plan fiduciary was equitable in nature and concluded that it was. *Amara*, 563 U.S. at 440-442 ("[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."). The *Amara* Court believed it "critical" that the defendant is a fiduciary and "analogous to a trustee." *Id.* at 442. In the wake of *Amara*, the Fifth Circuit has followed suit and found that compensatory money damages under § 1132(a)(3) are a potential equitable remedy. *Gearlds*, 709 F.3d at 452. In light of such precedent, this Court is persuaded that Aramark's claims for monetary damages under § 1132(a)(3) are equitable.

Aramark also raises § 1132(a)(2) ERISA claims.[1] Having given detailed and serious consideration to *Amara*, *Gearlds*, and the numerous District Court cases regarding § 1132(a)(2) claims relying thereon, this Court finds that § 1132(a)(2) ERISA claims seeking money damages are likewise equitable. *See, e.g.*, *Harmon v. Shell Oil Co.*, No. 3:20-CV-00021, 2023 WL 2474503, at *3 (S.D. Tex. Mar. 13, 2023) (holding that money damages under § 1132(a)(2) were equitable relief); *Henderson v. Emory Univ.*, No. 1:16-CV-2920-CAP, 2018 WL 11350441, at *5 (N.D. Ga. Feb. 28, 2018) (same). In the Court's view, the critical question in *Amara* was whether a surcharge remedy against an ERISA fiduciary was equitable. Nothing in *Amara* suggests that the Supreme Court's reasoning is limited to only § 1132(a)(3).

---

[1] 29 U.S.C. § 1132(a)(2) provides that the Secretary or any participant, beneficiary, or fiduciary may bring a civil action for appropriate relief under § 1109 (relating to liability for breach of fiduciary duty).

7

Aetna urges this Court to disregard *Amara* and adopt the reasoning in *Mertens*, *Great-West*, and *Montanile*. After reviewing these cases, this Court finds that *Mertens*, *Great-West*, and *Montanile* are distinguishable. As Aramark correctly points out, none of the defendants in those cases were fiduciaries, as Aetna is in this case. Indeed, as the Supreme Court explained in *Amara*, "the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference." *Amara*, 563 U.S. at 442. Aetna's status as an ERISA fiduciary shows this case to be analogous to *Amara* and not to *Mertens*, *Great-West*, and *Montanile*. Furthermore, even if Aetna is correct that *Amara*'s discussion of § 1132(a)(3) is dicta, this Court still gives due consideration to the Supreme Court's detailed discussion of the law in a similar factual context.

The Court further declines to elevate *Rose*, a Fourth Circuit case, to a level of higher importance than *Amara* and *Gearlds*. This Court is bound by Fifth Circuit precedent. Given the detailed and well-considered opinions in *Amara* and *Gearlds*, this Court finds that the weight of the authority favors a finding that Aramark's §§ 1132(a)(2) and (a)(3) claims for monetary damages against a fiduciary under ERISA are equitable.

Also, the Court notes that Aetna has previously taken the position that ERISA claims seeking money damages, including under § 1132(a)(2), are equitable. (*See* Dkt. No. 20 at 7 (collecting cases); Dkt. No. 20-2 at 4.) ERISA claims seeking money damages are either equitable or they are not, and Aetna should not be able to take inconsistent positions on this issue across different cases.

Accordingly, the Court finds that Aramark's claims fall within the carve-out of the Arbitration Provision and are not subject to mandatory arbitration. This case should not be stayed pending arbitration.

## V.     CONCLUSION

For the foregoing reasons, Aetna's Motion (Dkt. No. 10) is **DENIED**.

**So ORDERED and SIGNED this 26th day of April, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE